UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

                                                      Case No. 8-10-79506-reg

Robert John Cassandro

                                Debtor.                   Chapter 7
-----------------------------------------------------------------x
William and Martha Perillo,

                                Plaintiffs,

                                                     Adv. Proc. No. 8-11-08889-reg

   v.

Robert John Cassandro,

                                Defendant.
-----------------------------------------------------------------x

## *DECISION AFTER TRIAL*

Robert E. Grossman, United States Bankruptcy Judge

      This matter is before the Court pursuant to an adversary proceeding commenced by William and Martha Perillo (the "Plaintiffs") against Robert John Cassandro (the "Defendant") under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), (a)(6), and 727(a)(2)(A). At trial, pursuant to the Joint Pretrial Memorandum, the legal issues raised related solely to Count One of the complaint pursuant to 11 U.S.C. § 523(a)(2)(A). As such, the Plaintiffs are deemed to have abandoned the other claims raised in the complaint. The Plaintiffs seek to have deemed nondischargeable under § 523(a)(2)(A) a $178,000.00 judgment against the Defendant, obtained in the New York State Supreme Court of Nassau County.

      The Defendant, an attorney, was convicted on a charge of defrauding investors in a series of real estate transactions. The record shows the Defendant entered into multiple transactions where he borrowed money from investors in excess of the actual price of the property. The

1

additional funds were then used in part to repay investors from prior transactions in order to maintain the appearance that the investments were performing as promised. The bulk of the proceeds generated by the Defendant's scheme were utilized to support his lavish lifestyle and enabled the Defendant to hold himself out as a successful attorney. This scheme is identical to the allegations contained in the instant adversary proceeding. The Court had previously denied the Plaintiffs' motion for summary judgment, finding that the record in the criminal action was insufficient to establish that the Plaintiffs were defrauded in the same manner. Therefore, a trial was necessary in order to establish all of the elements of § 523(a)(2)(A).

The Court finds that the Plaintiffs have established by a preponderance of the evidence that the Defendant induced the Plaintiffs to enter into the loan agreement by false representation, false pretenses, and/or actual fraud. Thus, the Court finds the debt is excepted from discharge pursuant to § 523(a)(2)(A).

### *PROCEDURAL HISTORY*

On December 6, 2010 (the "Petition Date"), the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On Defendant's Schedule F the Defendant lists the Plaintiffs as unsecured, non-priority creditors holding a claim of $178,000.00. (Pls.' Ex. 3). On March 11, 2011, the Plaintiffs commenced this adversary proceeding against the Defendant. On June 3, 2011, the Defendant filed a Motion to Dismiss and Memorandum of Law in Support of the Motion to Dismiss, in lieu of answer. On August 12, 2011, the Plaintiffs filed a Memorandum of Law in Opposition to the Motion to Dismiss. On August 24, 2011, the Defendant filed a Reply Affirmation in Support of the Motion to Dismiss. On August 29, 2011, the Court

held a hearing on the Motion to Dismiss and denied the Motion. On September 12, 2011, the Defendant filed an Answer to the Complaint. On December 12, 2014, the Plaintiffs filed a Motion for Summary Judgment and Memorandum of Law in Support. On January 28, 2015, the Defendant filed an Opposition Response to the Motion for Summary Judgment, and a Memorandum of Law in Opposition. On February 17, 2015, the Plaintiffs filed a Reply to the Motion for Summary Judgment. The Plaintiffs, in the Motion for Summary Judgment and the Reply, relied in large part on the Defendant's criminal conviction of a scheme to defraud in the first degree. However, there was nothing on the record to establish that the State Court had found in the criminal action that the Defendant's particular conduct with respect to the Plaintiffs was fraudulent. On February 25, 2015, the Court held a hearing on the Motion for Summary Judgment and denied the Motion. On April 20, 2015, the Parties filed a Joint Pretrial Memorandum. On May 7, 2015, a trial was held, at which William Perillo (the "Plaintiff") and the Defendant testified. On June 29, 2015, the Plaintiffs filed a Post Trial Brief. On July 28, 2015, the Defendant filed a Post Trial Submission. On August 5, 2015, the Plaintiffs filed a Reply Post-Trial Submission, at which time this matter was deemed submitted.

## *FACTS*

The Joint Pretrial Memorandum sets forth certain agreed facts. Additional facts are developed from the trial testimony and exhibits. In 2002, the Plaintiff was introduced to the Defendant, who at the time was an attorney and partner in the law firm Abelow & Cassandro, LLP.[1]  From 2002 to 2007, the Plaintiff participated in six real estate investments with the

---

[1] At no time did the Defendant represent the Plaintiffs as their attorney.

Defendant. The Plaintiff's loans were repaid with some interest on the first five transactions, which were all structured similarly. In those transactions the Plaintiff loaned the Defendant money evidenced by promissory notes issued by a limited liability company formed by the Defendant, A-One Capital, LLC ("A-One"). A-One purchased the real estate and contracted with a builder to construct a home for a fixed price. At such time as the house was sold, the lenders received payment of the principal and interest due under the promissory note. The Defendant received a management fee and the remainder was paid to the builder. The lenders, including the Plaintiff, never received, nor were promised, a mortgage in the first five transactions.

On January 9, 2007, the Defendant sent an email to the Plaintiff regarding an investment opportunity involving the purchase of property located at 468 Main Street, Yaphank, NY 11980 (the "Yaphank Property"). (Pls.' Ex. 2). The Yaphank Property consisted of two lots, one developed and one vacant. (*Id.*). The Defendant informed the Plaintiff that his client, a contractor, was seeking a $325,000 loan in order to purchase the Yaphank Property and rehabilitate the house for sale. (*Id.*). The Defendant stated that his client was seeking the loan for a term of three to six months at 12% interest per annum. (*Id.*). In the email, the Defendant also told the Plaintiff that the "loan would be fully secured with a first mortgage on the property." (*Id.*). Additionally, the Defendant represented to the Plaintiff in the same email that the property, once the rehabilitation work was completed, would be worth approximately $650,000, resulting in a value to loan ration of 2:1. (*Id.*). Further, the Defendant told the Plaintiff that if he did not want to loan the entire $325,000, he could loan some portion of that and the Defendant would pool several loans. (*Id.*).

After receiving the email, the Plaintiff called the Defendant to express his interest in the investment and his desire to see the Yaphank Property before making a decision. (Trial Tr. pg 15 lines 5-8). The Plaintiffs visited the Yaphank Property and were concerned that the Defendant's

valuation of the Yaphank Property was higher than the actual value. (*Id.* at lines 9-19). In order to address those concerns, the Defendant promised to give the Plaintiffs a personal guarantee in addition to the first mortgage so that the Plaintiffs would "have two different avenues to recap (*sic*) [their] money." (*Id.* at lines 20-24). Relying on the Defendant's representations that the Plaintiffs would be granted a first mortgage on the Yaphank Property and a promissory note with a personal guarantee, the Plaintiffs decided to loan the Defendant $100,000 to be used towards the purchase of the Yaphank Property. (*Id.* at pg 15-16 lines 20-5).

On January 8, 2007, the Defendant received $260,000 in loans from four separate investors for the purchase of the Yaphank Property. (Pls.' Ex. 32). On January 16, 2007, the Defendant received $100,000 from the Plaintiffs (the "Loan"). (*Id.*). Contemporaneous to the receipt of the Loan, the Defendant, through A-One, executed a promissory note (the "Note"), which included a personal guarantee (the "Guarantee") from the Defendant. (Pls.' Ex. 4). The Note, signed by the Defendant as manager of A-One, provided that the Plaintiffs would be paid the principal of $100,000, plus 12% per annum interest upon the earlier of the sale of the Yaphank Property or July 15, 2007. (*Id.*). The Note further provided that the Plaintiffs would be entitled to a default interest rate of 24% from the maturity date until the full amount due under the note was paid. (*Id.*). Additionally, the Note provided that in the event of a default, which included the failure to pay the full amount due at the maturity date, "the Payee may, at Payee's option and without notice, declare all principal and interest due under the Promissory Note to be due and payable immediately." (*Id.*). At the times the Plaintiffs agreed to give the Loan to the Defendant, the Loan was given, and the Note was executed, the Plaintiff, relying on the Defendant's representations, believed that the Loan was to be secured by a first mortgage on the entire Yaphank Property. (Trial Tr. pg 15-16 lines 20-5). Additionally, the Defendant represented to the Plaintiff at the Note signing that after the house

was rehabilitated and sold, the Defendant would use his proceeds of the sale to build a house on the vacant lot. (Trial Tr. pg 17 lines 13-18). The Plaintiff stated that he would not have given the Defendant the Loan had he known either that the Defendant would not be giving the Plaintiff a first mortgage or that the Defendant would be giving other parties mortgages on the Yaphank Property. (Trial Tr. pg 62 lines 4-17).

On January 23, 2007, the Defendant received an additional $340,000 from Trio, Co. ("Trio"), a corporation formed and owned by the Defendant's father and uncles. (Pls.' Ex. 32, Trial Tr. pg 132 lines 7-10). On January 25, the Defendant gave Trio a mortgage on the Yaphank Property, which was recorded on July 13, 2009. (Pls.' Exs. 32, 15). At trial, the Defendant explained that the money from Trio was intended to be used either as a bridge loan to purchase the property or for construction. (Trial Tr. pg. 165 lines 20-22).

All of the aforementioned funds received for the Yaphank Property, a total of $690,000 by January 23, 2007, were deposited into the Defendant's law firm's unsegregated IOLA account. (Trial Tr. pg 164 lines 12-20). On January 27, 2007, the Defendant, through HA-MP Properties, Inc ("HAMP"), closed on the Yaphank Property. On April 4, 2007 the Defendant received an additional $300,000 from the Bruce Acker Trust, in exchange for a mortgage on the Yaphank Property's vacant lot, which was recorded on June 1, 2007. (Pls.' Ex. 32, 10). The Plaintiffs never received a mortgage on the Yaphank Property. (Trial Tr. pg 102 lines 5-8).

On May 13, 2008, the Plaintiff sent the Defendant an email expressing dissatisfaction with the progress of the work on rehabilitating the Yaphank Property for sale, which "was discontinued almost a year ago, if not more," and requesting a return of the Loan plus interest due. (Pls.' Ex. 6). On July 12, 2010, the Plaintiffs commenced an action against the Defendant and A-One in the Supreme Court of the State of New York, Nassau County by filing a motion for summary judgment

6

in lieu of complaint (the "State Court Action"). (Pls.' Ex. 8). On November 4, 2010, Justice F. Dana Winslow issued a decision in the State Court Action, granting the Plaintiffs' motion for summary judgment, holding that the Defendant was liable to the Plaintiffs for the full Loan in the amount of $100,000, plus interest. (Pls.'. Ex. 9). On December 6, 2010, the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

On May 13, 2014, the Defendant was convicted on a charge of a scheme to defraud in the first degree by the New York County Supreme Court. (Pls.' Ex. 33). On July 29, 2014, Justice Carro of the New York County Supreme Court sentenced the Defendant to imprisonment for 1 1/3 to 4 years. (Pls.' Ex. 34). On July 29, 2014, Justice Carro further ordered that the Defendant make restitution to a number of individuals in the amount of $5,870,169, included in which was restitution to the Plaintiff in the amount of $100,000. (*Id.*). During sentencing, Justice Carro stated that the Defendant engaged in a "scheme in order to borrow way more money than was necessary to build any of those houses." (*Id.*). Additionally, Justice Carro stated "[t]he Bankruptcy Court should in no way discharge any of these debts that were incurred by your business transactions. They were clearly fraudulent." (*Id.*). However, in the criminal proceeding, the Court made no particularized findings that the Defendant engaged in fraud in connection to the transaction with the Plaintiffs for the Yaphank Property. Absent from the record in this adversary proceeding are the jury instructions and trial transcript from the criminal proceeding, which might have contained more specific evidence regarding the Debtor's conduct with respect to the transaction at issue in this adversary proceeding.

## *DISCUSSION*

7

*Applicable Legal Standards*

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts and provides as follows:

> (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for dischargeability: false pretense, false representation, or actual fraud. The plaintiff can satisfy a claim under § 523(a)(2)(A) by establishing one of the three types of fraud. *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 35 (Bankr. E.D.N.Y. 2011) (citation omitted). The party challenging the dischargeability of a debt bears the burden of proof by a preponderance of evidence. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

For purposes of section 523(a)(2)(A), the term "false pretenses" means "conscious deceptive or misleading conduct calculated to obtain, or deprive another of, property." *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). It includes "any scam, scheme, subterfuge, artifice, deceit, or chicane in the accomplishment of an unlawful objective" by the defendant. *Id*. "'A false pretense has also been held to be an implied misrepresentation or conduct intended to create a false impression,' although in either case, it is 'promoted willingly and knowingly by a defendant and is not the result of unintentional conduct or an unintentional misrepresentation.'" *In re Nisivoccia*, 502 B.R. 139, 155 (Bankr. E.D.N.Y. 2013) (citing *In re Hambley*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)). "Failure to disclose material facts on which

8

a transaction depends constitutes false pretenses." *In re Hambley*, 329 B.R. at 396 (citing *In re Soliz*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)).

"In order to establish a debt is non dischargeable as a debt for money obtained by false pretenses, the plaintiffs must establish (1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *In re Hambley*, 329 B.R. at 396 (citing *In re Dobrayel*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)).

To establish "false representation" under section 523(a)(2)(A) the plaintiff must prove that "the defendant (1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant." *In re Chase*, 372 B.R. 133, 137 (Bankr. S.D.N.Y. 2007); *see also Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009); *In re Dobrayel*, 287 B.R. at 12 (citing BLACK'S LAW DICTIONARY at 619 (7th ed.1999)). In general, a failure to disclose information may constitute false pretenses within the meaning of Code Section 523(a)(2)(A). *In re Hambley*, 329 B.R. at 396. The critical element of intent admittedly presents some difficulty as direct evidence is rarely readily available. *See Citibank (South Dakota), N.A. v. Senty* (*In re Senty)*, 42 B.R. 456, 459 (Bankr. S.D.N.Y. 1984). Nevertheless, "intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender." *Hong Kong Deposit and Guaranty Co., Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y.1990) (citations omitted); see also *In re Hambley*, 329 B.R. at 396-97 ("it is well established that intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented").

Finally, a debt may be excepted from discharge under section 523(a)(2)(A) where a plaintiff can establish the elements of "actual fraud," which include "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of the damages." *Nunnery v. Rountree (In re Rountree)*, 340 Fed. Appx. 899, 901 (4th Cir. 2009) (citing *Field v. Mans*, 516 U.S. 59, 61 (1995)); *see also In re Scialdone*, 533 B.R. 53, 58 (Bankr. S.D.N.Y. 2015). Whether a Plaintiff's reliance was justifiable is measured by a subjective standard, not by an objective, reasonable person, standard. *See In re Scialdone*, 533 B.R. at 61.

While these are technically three separate legal standards, courts often analyze them as one, requiring "a showing of intent to defraud, justifiable reliance, and causation of loss" for relief to be granted under any of the three prongs of § 523(a)(2)(A). *In re Scialdone*, 533 B.R. at 59.

*Analysis*

If the record of jury instructions, the trial transcript, or particularized findings from the criminal proceeding against the Debtor included a finding that the Defendant defrauded the Plaintiffs in connection with the Yaphank Property, there may have been no need for a trial in this adversary proceeding. In that case, collateral estoppel may have applied to permit this Court to find in favor of the Plaintiffs on Summary Judgment. However, absent particularized findings as to the victims and the conduct, the mere conviction for a scheme to defraud and inclusion of a party in a restitution order are insufficient to establish, by collateral estoppel, that a defendant's conduct renders a specific debt nondischargeable under § 523(a)(2)(A).

The Plaintiffs have proven, by a preponderance of the evidence at trial, that the Defendant's conduct constituted false pretenses, false representation, and actual fraud. The Plaintiffs have

shown, by the totality of the circumstances that the Defendant harbored the requisite intent to defraud. The Defendant's overall course of conduct strongly evidences fraudulent intent. The Defendant borrowed against the Yaphank Property in amounts considerably greater than its stated value, despite his representations to the Plaintiff that the value of the Yaphank Property would be roughly double the amount invested. Additionally, the Defendant gave the Plaintiffs a personal guarantee. However, when the Plaintiffs attempted to collect on that personal guarantee, the Defendant merely promised future payments, none of which were actually forthcoming. The Defendant, despite his representation that the Plaintiffs would receive a first mortgage, provided a first mortgage to his father's company, Trio. The Defendant's explanation as to why he borrowed money from Trio, either as a bridge loan or construction loan, is unpersuasive. In fact, at the time Trio made the loan, the Defendant had already received, from the Plaintiff and other lenders, funds sufficient to purchase the Yaphank Property, so there was no need for a bridge loan. Additionally, the Defendant was criminally convicted of engaging in a scheme to defraud in connection with this, and other, real estate deals.[2] All of the aforementioned, when viewed together, establishes that the Defendant intended to defraud the Plaintiffs.

Additionally, the Plaintiffs' reliance on the Defendant's representations were justifiable under the circumstances. The Plaintiffs had previously loaned the Defendant money for prior real estate purchases and realized returns. The Defendant was a practicing attorney who used his law firm's email address for communications, and all deposits were into his law firm's escrow account, which added a patina of legitimacy to the deal. Prior to the consummation of the Loan, the Plaintiffs had no reason to suspect that the Defendant was engaged in fraudulent conduct. As such,

---

[2] While the State Court's findings against the Defendant, including its statement that the Defendant's debts should not be discharged, has no preclusive effect in this proceeding, it is among the several factors that this Court has considered in determining whether the totality of the circumstances indicates that the Defendant intended to defraud the Plaintiffs.

the Plaintiffs were justified in relying on the Defendant's representations that their loan would be used to purchase the Yaphank Property, that they would receive a first mortgage on the Yaphank Property, and that they would receive a return on the Loan upon the earlier of the sale of the Yaphank Property or July 15, 2007.

Finally, the Defendant's representations to the Plaintiffs were the direct cause of the Plaintiffs' loss. The Plaintiffs would not have given the Defendant the Loan had they known that they would not receive a first mortgage. Similarly, the Plaintiffs would not have given the Defendant the Loan had they known that Trio and/or Acker would receive mortgages on the Yaphank Property. Absent the Defendant's false representation to the Plaintiffs, the Plaintiffs would not have suffered any loss.

## *CONCLUSION*

For the foregoing reasons, the Court finds the Plaintiffs have satisfied their burden of showing, by a preponderance of the evidence, the elements of § 523(a)(2)(A) and, accordingly, concludes that the judgment debt owed by the Debtor is nondischargeable. The Court shall enter judgment consistent with this Memorandum Decision forthwith.



Dated: Central Islip, New York  
       October 14, 2015

                                                  **Robert E. Grossman**  
                                          **United States Bankruptcy Judge**